May it please the Court, Lawrence Rolfing on behalf of Christopher O'Brien. This is round two. The case was fully briefed quite some time ago. It was argued last year in front of two-thirds of a different panel last year. The primary questions are, did Mr. O'Brien even raise the issue of a defective finding, a defective affirmative finding in the ALJ decision? And the answer is yes. There was no invitation of error. There was no stipulation of what was and was not past relevant work. The judge just made a finding and didn't really explain the finding. He just concluded that there was past relevant work and O'Brien could still perform that work. The commissioner and the district court agreed that one of the jobs didn't count because it was too skilled and required door-to-door sales and that's not something that he could do with his residual functional capacity. The other job — I think you're going to run into a Minnell and Scheibe problem. So tell me what your best argument is with regard to those cases. I actually know those cases quite well, Your Honor. In Menal, Bertha Menal, the intrepid attorney in that case went to district court and looked at it and said, the attorney that handled the hearing blew it. And so he, being me, thought, I'll just submit the data that everybody relies upon and it's clear that these jobs don't exist and the numbers suggest it. And the district court and this court said, you can't do that. You can't submit new evidence to rebut the vocational expert. And so when Scheibe, Majid Scheibe's attorney, also blew it before the administrative law judge in the agency and the intrepid lawyer, me, decided, well, this doctrine of administrative notice has five examples. I'll just use the five examples to prove that leaf tires in the tobacco industry don't exist in significant numbers because the tobacco industry actually doesn't exist in California and doesn't exist in significant numbers nationwide when you consider the entirety of the tobacco manufacturing industry. And this court said, no, you can rely on the DOT when you get to district court, but you can't rely on county business patterns. You can't rely on the Occupational Health Handbook. O'Brien doesn't rely on anything new. He is relying on what is in the record before the ALJ and says on the record that what was before the ALJ does not provide an evidentiary basis that satisfies the legal standard of what is and is not past relevant work. Mainville and Scheibe are new evidence cases. This is not new evidence. This is the judgment of finding that he could be a telemarketer and when O'Brien worked as a telemarketer, it never rose to substantial gainful activity. It never did. Not on this record. So what evidence in the records suggests that O'Brien worked as a telemarketer for four months in 2009? That's my... Yeah, the... That's on page 259 of the administrative record, Your Honor. And he says he worked from January 2009 to April 2009. But elsewhere, he also described that as three months. And it makes a difference because if it's three months, it changes the denominator versus four  So which is it? Is it... He said three, but it also could be construed as four. So what is it? Yeah. Mr. O'Brien, how long did you work as a telemarketer? Well, I got fired because it says he was terminated three months later. That's what three months means. It means that three months later. That's how people talk. That's how ordinary human beings talk. In Alaska and in this court in Molina and other cases, we have this doctrine that we excuse missteps by professional ALJs because we can discern what they really meant. And I would suggest that when you have a layperson that isn't a sophisticated person, and he says I worked from January to April, and that's three months, it's like I can easily discern what you really meant because April is three months later than January. And so did he mean that he worked for three months? Well, January to April is about working three months. Did he work in three months, which is what the commissioner's ruling says? Did we look at the number of months that you worked in? Well, what's the rule? Are we supposed to suppose it's January 15th to April 2nd? Do we add up the days and that's how we do the denominator? How does it work? In the quest for administrative regularity and to make it easy so that we're not counting days, the commissioner says we count the months that you actually work in. So one day in a month counts as a month? Yes. What document establishes that rule as an administrative matter? That would be Social Security ruling 8363 and 8262. 8362? 8263. I mean, I'm sorry. 8262. 8262. Right. And so... What do we make of the conflict in the record? Because on the one hand, as you point out, he claims to work between three and four months. But on the other hand, he also said he worked 40 hours per week earning $11 per hour, which is like $1,900 plus change or so. Do we still in that instance vacate and remand because it was up to the ALJ to explain that conflict? Or do we say, well, you know, this is his testimony. So taking him at his word, 40 hours per week, $11 per hour, we do the math that way. Two responses, Judge. Yes, we remanded. And the why is the most important part. The earnings record, the detailed earnings grade, the summary earnings grade, the certified administrative records, those are presumptively accurate. Under the regulations, I don't have the citation of the regulation off the top of my head. The earnings records that are reported, the employer files a W-3 with the IRS, the IRS transmits that information to SSA, and SSA drops that information into a certified earnings record and a detailed earnings query. All of that information is there. And the regulations say those earnings records are presumptively accurate. How do we rebut that presumption? Well, it isn't, I worked 40 hours a week and I made $12 an hour. That doesn't cut it. What would cut it would be, did you work under the table at that job? No, then it's not rebutted. Did you work, did you get paid off the record for any of those jobs? Well, if there's no evidence of that, then the presumption prevails. The presumption remains in place. So I'm looking at ruling 82-62, and what it says for duration, it says duration refers to the length of time during which the person gained job experience. It should have been sufficient for the worker to have learned the techniques, acquired information, developed the facility needed for average performance in the job situation. The length of time this would take depends on the nature and complexity of the work. That's all it says. I don't see anything about if there's any day in a calendar month that calendar month counts. I misspoke. Um, it's, um, oh, I'm on the wrong page. 83-35, it's described at the bottom of 26 and on the page 27. 83-35? Yes. This is, uh, when an employee's earnings or work activities vary somewhat from month to month, it may be necessary to average countable earnings over a number of months in order to compare those earnings with the applicable monthly amount in the earnings guidelines. Generally, such earnings are averaged over the entire period of work requiring evaluation. Well, but how does that tell us that the entire period should include, for instance, an entire calendar month if you only work on the first day of that month versus just counting up the actual days? I'm so confused. I agree, Your Honor. But there's no evidence that he stopped on April 1st, and there's no evidence that he started on January 31st. The evidence isn't there, and the judge didn't make a finding that... Except for his statement that he worked for three months. Because that's how people talk in the vernacular. That is how people express their times. My mother says he worked from January to February, February to March, and March to April. That's three. That's how my mother talks. Right. I think the problem is that he said a lot of different things, and they're not consistent, and somebody has to sort that out. And I don't know how it's sorted. I don't know how we do it in the first instance at the pellet level at this point. Because it isn't sorted out. That's the problem. The judge is vested with discretion to make these kinds of factual determinations, and we don't do it by a fudge. No, I understand. I understand the argument. You're now over time, but let me give you a couple of minutes back for rebuttal. Thank you. Good morning, Your Honor. Shea Bond on behalf of the Commissioner of Social Security. I think really the focus of this panel is what was actually said about the time frame that the claimant did this work. I'm sorry. Can you speak up? I apologize, Your Honor. I'll lean over this way. I believe the panel's concern seems to be focusing on what period of time did the claimant perform this work in 2009. And it's our position that the claimant's statement that he did it for three months is clear and conclusive. Well, it's not so clear to me because he said other things as well. He said he worked between January and April. Whether that's three or four months is subject to reasonable debate. The fact that we've spent a lot of time today, and you did last time as well, just talking about is it three months? Is it four months? Are people speaking colloquially? Or is there a rule that tells us how to dictate or calculate that time frame? That's very confusing to me. But on top of that, he also said he worked 40 hours per week earning $11 an hour. And then he also said he stopped working on June 5, 2009. So that would be five months of work. And then if my calculation is correct, that's only $630 per month. So I think it's the ALJ's job to sort out all of those inconsistencies so that we can figure out the basis on which the ALJ made that determination, isn't it? So with that conflicting evidence, what are we supposed to do about that? Well, I'm going to push back a little about saying it's conflicting evidence because I think that the claimant's statement that he did it for three months within this, he started sometime in January. It ended in sometime in April. But then he clarifies and says it was a total of three months. Now, I know Mr. Rolfing is saying that, you know, we talk colloquially and say that, you know, three months actually means more. But I would submit that if the claimant actually meant that he worked more than three months, he could have said, made that clarification in a variety of ways. He could have said, I worked three to four months. I worked over three months. I worked between three and four months. But when he wrote down that statement and said it was three months, that's definitive. What's your response to the reliance on Social Security ruling 83-35? Because I'm looking at that one and it does have multiple examples about how to do it. And they actually do the income for each month, the different amounts, and then you add them up and divide by the number of months. That's how it's shown in every example, which does support his idea that if there's any income in that month, you just list that for that and then divide. That would give us four here. Even if the actual temporal period was three months in length, that would give us four. So why isn't he right on that argument? Well, I think 83-85 talks about different kinds of scenarios about when you would have to average, when it's more unclear about when the period of time for which the claimant has worked. But the SSR also says that when you have an actual discrete period of time, you average it over the actual time. And so here we have a claimant saying, I worked three months. So we would average it over the three months because we know it's a quantifiable time period. So we take the testimony and we disregard the reporting on the disability report? I'm sorry, could you repeat that? We take the testimony of three months and we disregard the reporting on the disability report. Which disability report are we talking about? The one that says he stopped working in June. Do you have a record site for that when you're... 255, ER 255. When did you stop working, month, day, year? June 5, 2009. Why did you stop working? Because of my conditions. I'm not sure what work that might be referring to. But if we're talking about the, you know, claimant has... Right, it's 2009, which is why I associate it with the telemarketing. Right, I'm not sure if that refers to his specific telemarketing work. But when he did fill out his work history report specifically and was asked to delineate each of the occupations that he had performed during specific discrete periods of time, he listed it down as actually January to April and then said it only lasted three months. So this might be a stray comment. And I think I would... But the date is so specific, June 5, 2009. It does look specific. But I would say that the more definitive statement from the claimant is going to be in the work history report where he actually outlined that work. And I would point out that the vocational expert also looked at the records and completed prior to the hearing, and this is at record 373, I believe, outlining the work that the claimant had done. It's the telemarketing work. It was the sales position. And also the claimant's work history reports at 2E and 4E. 4E is the page 284 where the claimant said, I've worked this for three months. Right. No, I'm aware of that. I just don't know the significance of this reporting and whether we just disregard one, pick the other, how we go about doing that. What I think is significant, though, is that when the ALJ at the hearing asked the claimant's attorney whether there were any objections to the exhibits, the attorney said no. And I would submit that that was the time period at which if there was some sort of confusion or an ambiguity or an inconsistency, that would be the time that the claimant's attorney would have brought that to the ALJ's attention. And I would say absent that, the ALJ would not think, given that you have the earnings record and then you have the claimant's definitive statement saying I did this telemarketing work for a total of three months, why would there be any additional- But we've said that ALJs have an obligation, which isn't true in a lot of other administrative contexts, to develop the record in order to line it up with what the rules require. And so if the ALJ leaves things as an ambiguous mess, then maybe it needs to go back. Well, and I would push back that we have an ambiguous mess here. And the reason is that, again, the ALJ asked the claimant's attorney at the beginning of the hearing, do you have any objections to this exhibit list? And the attorney said no. So there's nothing signaling to the ALJ that there was anything amiss or ambiguous. And I would also note that on, this is on page 39 of the record, the ALJ said he was holding the record open for 30 days for submission of additional evidence. And I think that specifically was towards medical evidence, but the record was held open. So if we're talking about a duty to develop, claimant ultimately carries the burden of proof at step four to say that I don't have any past relevant work that I can perform. Given that the ALJ held the record open, that would have been an opportunity for a claimant to submit anything else that they thought would have touched upon this issue, but didn't. And so- Can I ask you also before your time runs out to address the issue of forfeiture that the district court invoked based on the joint submission? Yes. So we had talked about that last time. There is persuasive authority from this court that forfeiture can attach at step four if the issues are not raised to the ALJ at the administrative hearing. I would also identify that the district court had cited the Matney case. That is a published case from 1992, I believe, which also had applied forfeiture in a situation where the claimant was challenging the SGA nature of the past relevant work and saying that the ALJ had not complied with our regulations and rulings, I think, in explaining the step four finding. And they found that the issue had been forfeited because the issue had not been raised to the ALJ and also not to the district court. Now, I understand that we don't have the district court prong here, but I would submit that the fact that this court highlighted the fact that the claimant didn't. The district court did say that the failure to respond to the forfeiture argument that had been raised in the joint submission by the commissioner was a forfeiture... Another level. ...of that argument in the district court. And that was the forfeiture I wanted you to address. Oh, I apologize. There's different layers of forfeiture here. No, I understand. There's the issue of did you forfeit it based on what happened in front of the ALJ? Correct. But then when the government raised the issue of ALJ forfeiture in the district court, there wasn't a direct discussion of that in the reply portion of the joint submission and the district court tagged that with a forfeiture. Correct. And normally, optional replies don't result in forfeiture, so I'm curious as to why you think that district court ruling of forfeiture was correct. Well, I don't think there's like a blanket rule that if an issue is not brought up in a reply brief or even a reply brief isn't filed at all, that there's like a blanket rule that there's forfeiture. But I think it's case-specific and dependent. And so when the government had raised the specter of a forfeiture, that you forfeit this, and we do have circuit precedent, like Shiaibi, Menal, and the unpublished cases have applied this to step four, it would behoove the claimant to address that in a reply brief. And the claimant did actually file a reply brief, but just ignored the issue entirely. So when the district court... What you said was that, you know, this court sits in a quasi-appellate capacity, and it still has to examine whether or not there's substantial evidence to support the findings lined up against what the rules require. That could be read as a response to the forfeiture argument that you still have to do substantial evidence review, you know, based on the record that exists. True. And, I mean, the district court actually... That's all that's at issue in front of us, is to line up with the regs. And, you know, the district court didn't just base their decision on forfeiture. It did go on to address the merits. So, but what I'm saying is that it was an appropriate statement from the district court to say that we're taking into... I'm taking into consideration that you did not even bother to address this issue that the government had raised in your reply brief. But then, alternatively, the district court is saying, I'm finding that substantial evidence on the merits supports this decision, and that no additional articulation was required, given that the statement from the claimant about I did this job for three months was clear enough. There wasn't an ambiguity because that was the clarifying statement from the claimant. And once averaged, the earnings per month meet the SGA requirements. And that is the substantial evidence in support of the ALJ's findings. And that's what this court looks to. I know you're over time, but let me give you a couple of extra minutes to address the other layer of forfeiture, the administrative forfeiture. Can you respond to your opposing colleague's argument on administrative character in distinguishing cases like Minel and Scheibe on the ground that that's really a failure to present evidence? Well, we also cited in our brief, there was the Kennedy case, and that was a listings issue. And so in that case, the Kennedy said, well, claimant didn't come up with any kind of plausible theories to why the claimant had equal the listing. And so that wasn't a presentation of new evidence. That was actually a presentation of the issue. So I would say that, while Scheibe and Minel address specific scenarios where maybe there was new evidence being brought into the record, but that's not the exclusive way in which administrative forfeiture can attach. Which case are you relying on that doesn't involve presentation of evidence? Well, it was the Kennedy case. It's cited in our brief. A published case? One moment, Your Honor. Kennedy v. Colvin. Sorry, 738 F. 3rd, 1172. And we had cited that for a proposition that this court has taken litigants to task for not developing an issue administratively, presenting a plausible theory about how you equaled a listing. And so I would say that doesn't go towards the submission of new evidence. It's how you're bringing up an issue to an ALJ to explain your case. Do we need to get to Kennedy? Or are Minel and Scheibe sufficient to hold that? I mean, they are. But if the question is, how has this court applied administrative forfeiture ideas in the past? I would submit that Kennedy is an additional example. But with Minel- But what do you think is properly before us? Can we do substantial evidence review as to whether or not the ALJ's finding that he could perform this past relevant work is supported by substantial evidence under the standards and the regulations? So are we barred from doing that? Well, I mean, that's our primary argument is that this had been forfeited or waived. But if the court does reach to the- No, I want to understand what your argument is. You're saying we cannot do the substantial evidence review that I just described. Well, given the limited scope of the issue that the claimant presented, I mean, there's nothing else that claimant is arguing about in this case. It's not like there's another layer of attack on the ALJ's decision, like the RFC finding. That would be something that- Correct, but can we perform substantial evidence review of the finding that he could do the telemarketing work? Only if this court found that the claimant had not waived it, but that's not our position. I'm not sure if I'm answering your question, because Needle and Scheibe involve development of evidence, and there may be times where you need to inject an issue into the case in order for the record to be developed. Here, the issue was decided. The ALJ held this is prior relevant work that he could do. And you're telling us that we cannot review that for substantial evidence based on your view of forfeiture. That strikes me as an extraordinary position. Well, I would just say that under the facts of this case, given that the claimant's representative attorney had multiple opportunities to raise the issue specifically to the ALJ- It's the record that we have, so I understand and share Judge Collins' concern because the regulations do treat issues differently than the presentation of evidence, and for good reason, because this is not an adversarial process. So it's not like the other cases that we review, right? Because the regulations are very stringent, that if you've got evidence, you've got to present it. But issues, that's different. The issues of development, a lot of that really frankly is on the ALJ to develop. Well, and I would say with Scheibe and Amino, it was a step five issue. Obviously, that was an issue that had been decided by the ALJ, and it was based on evidence in the record. So, I mean, it's not very different than that, like conceptually, I would say. Right, I know you cited Kennedy, and I have to say off the top of my head, I can't remember what that was about. So, and whether it's more similar to Amino and Scheibe or whether that presents a different situation. So we'll go back and look at that. But you well over time. Let me see, Judge Thomas, you have additional questions, Judge Collins? Right, thank you very much for your very helpful argument today. I promise you, Mr. Rolfing, some rebuttal time. So you may re-approach the lectern. Thank you. Circuit precedent that's not published is not precedent. It's just a memorandum disposition, and they're short on facts and they're short on analysis. So this court in... Well, she cited Kennedy. Are you familiar? I am familiar with Kennedy. I actually argued that case too. Kennedy was a man with low IQ, and he had avascular necrosis of the hip. And the argument was that his avascular necrosis of the hip was so severe that it substituted for their findings. And the court said, under our case law, and this is Marcia versus Sullivan is the root is the original case for these propositions about the listings, is that because of the unique nature of the listings issue and equaling a listing, if you want to raise an equals issue, you have to tell the judge that you think that an equals issue exists. Because the equals issue is fundamentally different. It is a nuanced argument, and that's what Kennedy stands for. It's not a determination that an ALJ can't even make an equals decision unless there's a medical expert that says he equals. Was there, as you're describing it, was there an equal... Did the ALJ make any ruling with respect to the equals issue in Kennedy? It's part of the findings integrated template. The decisions are all relatively similar formatting, and the step three finding always says he does not meet or equal a listing. And because the state agency, the DDS doctors, always say he does not meet or equal a listing. And so there's, equaling is a, equaling requires medical evidence. They have a doctor saying this person equals a listing. And I just want to zone in on this idea about admitting evidence into the record. Admitting evidence into the record that is minimally probative does not mean that there's no conflict in the record. And whether evidence, if I don't object to evidence in a jury trial, am I precluded from arguing that that evidence is not persuasive, it's not substantial, the jury should disregard it? Of course not. I've always preserved that argument. In the administrative context with 30 minute hearings, is there time in an administrative hearing to go through and make all those findings? No. Does the agency ask the representatives, the professional representatives at the hearings, give us a proposed decision and make proposed findings at steps one through five of the sequential evaluation process? No. That would be invited error if that happened. But it doesn't happen. What happens is the judges have the hearings and they take testimony. And in their answering brief, the government said, well, the judge asked the vocational expert about past relevant work. It's like, actually, he didn't. Judge Lasecki asked the vocational expert about past work, not about the legal conclusion of relevance. Judge Lasecki left the legal conclusion open. And it needs to go back to Judge Lasecki so he can close the circle. Thank you. All right. Thank you very much, counsel, to both sides. The matter just argued is submitted and the decision will be issued in the normal course of business. Court is adjourned for the day. Thank you. Thank you very much. All rise. This court for this session stands adjourned.
judges: NGUYEN, COLLINS, THOMAS